IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AUBREY WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-1191-STE |
| ) | |
| ANDREW M. SAUL, ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for supplemental security income (SSI) under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** this case for further proceedings consistent with this memorandum opinion and order.

**I.     PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 16-29). The Appeals Council denied Plaintiff's request for

review. (TR. 1-6). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 19, 2017, the date he protectively filed his application for SSI. (TR. 18). At step two, the ALJ determined that Mr. Williams had the following severe impairments: major depressive disorder, moderate; and anxiety disorder. (TR. 19). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 20).

At step four, the ALJ concluded that Mr. Williams retained the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following non-exertional functional limitations: understand, remember and carry out simple, routine, repetitive instructions; make only simple work related decisions; deal with only occasional changes in work process and environment; have no contact with the general public; have only incidental, superficial work-related type contact with co-workers, and supervisors, i.e. brief, succinct, cursory, concise communication relevant to the task being performed; cannot tolerate work traditionally known or classified as "fast pace" or "production pace" type work; cannot tolerate "teamwork" type job, i.e., that the claimant cannot work in conjunction with, or in tandem with, one or more co-workers on the very same job task or duty; cannot tolerate strict production or performance quotas (wherein the employee must complete 1/16th of the day's work every half hour), but he can vary the pace of the work over the course of the workday (able to speed up or slow down as the employee chooses), albeit that all assigned work is completed by the end of the workday or workweek, whichever is applicable; and may

have up to an reduction in overall daily production of no more than an average of 15% less than that of the average employee.

(TR. 22). The ALJ also found that Mr. Williams had no past relevant work (TR. 28).

With this RFC, a vocational expert (VE) testified that Mr. Williams could perform unskilled jobs existing in significant numbers in the national economy such as Night Cleaner, D.O.T. #358.687-010; Meat Clerk, D.O.T. #222.684-010; and Floor Technician, D.O.T. #389,667-010. (TR. 29). The ALJ established that the VE's description of job duties was consistent with the information in the Dictionary of Occupational Titles.

### III.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). It is the Court's

responsibility, however, to "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

## IV.    ISSUES PRESENTED

On appeal, Plaintiff contends the ALJ erred by misstating the extent and nature of Plaintiff's activities of daily living and exaggerating his abilities to manage his anxiety. (ECF No. 14:4-13). Further, Plaintiff contends the ALJ erred in his findings regarding whether Mr. Williams' panic attacks have been diagnosed by an acceptable medical source. (ECF No. 14:13-16). Finally, Mr. Williams alleges the ALJ erred in failing to analyze his neck and back impairments beyond step two of the sequential evaluation. (ECF No. 14:17-19).

## V.    ANALYSIS

### A.    The ALJ's Evaluation of Plaintiff's Severe Impairments

Plaintiff contends the ALJ misrepresented or downplayed Plaintiff's symptoms resulting from his anxiety disorder, panic and depression. The ALJ relied heavily on functional reports from both Plaintiff and his companion wherein they reported Plaintiff's activities of daily living to support a finding that Plaintiff could perform certain jobs. But overall, the ALJ inaccurately portrayed Plaintiff's testimony and statements in functional reports regarding his ability to perform the severely limited activities of daily living Plaintiff described. Below are examples of misstatements in the ALJ's decision that affected his RFC determination resulting in an RFC unsupported by substantial evidence.

> Both the claimant and his girlfriend reported that the claimant primarily takes care of all of the chores around the home and even takes care of his girlfriend and their pets because she works to support him financially. (Exhibits 3E, p.2; 4E, p. 2; 7E, p. 3). They also reported that the claimant performs the grocery shopping. His girlfriend stated that he drives independently to the store, even though the claimant reported he could not concentrate on driving. (Exhibits 3E, p.4; 7E, p. 4). Grocery stores are historically busy places that can be crowded at times, which indicates the claimant is capable of handling some contact and interaction with people in his daily life. The claimant also reported the ability to watch his grandchildren, even if he occasionally needs to resort to his bedroom to manage his anxiety (Exhibits 3E p. 5; 7E p. 5).

(TR. 24). The ALJ's conclusion that Plaintiff could have "work-related type contact with co-workers and supervisors" was based on this incomplete recitation of the evidence. The Plaintiff reported that he took care of the pets and sometimes did some household chores. The ALJ interpreted these limited activities as demonstrating Plaintiff had the "ability to manage the household and complete daily chores," (TR. 25). From this, the ALJ extrapolated that Plaintiff could "perform simple tasks, even if he needs a slower pace to do so." (TR. 25). But the ALJ ignored the functional statement of Plaintiff's girlfriend who stated she helps Plaintiff do the chores and take care of the pets at times. (TR. 181). She also stated she has to talk Plaintiff into doing the chores and that he cannot do housework or yardwork when he is depressed. (TR. 182). Plaintiff reported that because of his depression, he is unable to complete chores or do yardwork one to two times each week. (TR. 190-191).

Plaintiff did testify that he could sometimes shop for groceries. But he specifically stated in a function report that he went to the grocery store only when he knew it would not be crowded. (TR. 209). Further, he testified that sometimes, because of his anxiety, he would leave his groceries and leave the store. (TR. 39). Plaintiff's brief, sometimes

5

unsuccessful trips to the grocery store are consistent with the ALJ's finding that Plaintiff "is capable of handling some contact and interaction with people in his daily life." But the ALJ misrepresented the "contact" Plaintiff "handles" at the grocery store. Thus, this evidence is not substantial enough to support the ALJ's RFC that found Plaintiff capable of handling even "brief, succinct, cursory, concise communication relevant to the task performed." (TR. 22).

The ALJ's statement that Plaintiff has the ability to "watch his grandchildren," suggests Plaintiff could care for his girlfriend's grandchildren by himself. This statement is a gross mischaracterization of Plaintiff's reported interaction with his girlfriend's grandchildren. In his function reports Plaintiff stated that on Friday nights, Plaintiff's girlfriend entertains her grandchildren in her home where she lives with Plaintiff. (TR. 192, 210). But Plaintiff testified that he sometimes must retreat to his room when the grandchildren are there because their very presence often provoked a panic attack. (TR. 39).

These three examples of activities in which Plaintiff sometimes participates do not substantially support a finding that he can communicate effectively in a work situation or that he could work a full forty-hour week without having a panic attack that would require him to retreat from a job. The RFC assessment is not supported by substantial evidence when the record is considered as a whole.

### B.  The ALJ's Evaluation of Plaintiff's Panic Attacks

The ALJ rejected Plaintiff's claim that panic attacks affect his ability to engage in substantial gainful employment. The record reflects that Plaintiff suffered a panic attack

6

during the administrative hearing that the ALJ witnessed, albeit by video. As a result of this panic attack, Plaintiff fainted in the hearing room and hit his head on the floor. (TR. 37-38).

But despite witnessing the panic attack, the ALJ who contends that no acceptable medical source "diagnosed claimant with panic attacks or observed panic episodes during his appointments." (TR. 19). To the contrary, on February 26, 2016, Dr. Marcus Fidel, M.D. diagnosed Plaintiff with "Dysthymia, Social Phobia, Generalized Anxiety Disorder with Panic." (TR. 303). Although this diagnosis was made before Plaintiff filed this application for SSI, the diagnosis remains relevant because Plaintiff's medical record demonstrates his continued need for anti-anxiety medication well into 2018 when the medical records end. (TR. 309-314; 343-363; 392-393). Moreover, a medical source need not witness a panic attack to diagnose a patient with generalized anxiety disorder with panic. The ALJ erred in discrediting Plaintiff's testimony that he suffers panic attacks, as his conclusion is not supported by substantial evidence in the record.

### C. The ALJ's Evaluation of Plaintiff's Neck and Back Impairments

Plaintiff alleges the ALJ erred in failing to evaluate his alleged neck and back impairments—impairments the ALJ found were not severe at step two of the sequential evaluation.

At step two, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. *See Dray v. Astrue*, 353 Fed. Appx. 147, 149 (10th Cir. Nov. 17, 2009). "Thus, step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition

of disability.'" *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring)). Because the conclusion that a claimant has at least one severe impairment requires the ALJ to proceed to the next step of the sequential evaluation, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe." *Id.* Such is the case here.

For most of the period at issue, Plaintiff never complained of back or neck pain. In fact, it was not until after he fainted and fell while he was testifying at the administrative hearing that he first complained of neck pain.

An MRI of Plaintiff's cervical spine on April 10, 2018, demonstrated multilevel degenerative disc disease resulting in foraminal stenosis and central canal stenosis at C5-6, C6-7, C7-T1 and C3-4. (TR. 384-385). But the medical record also demonstrates that, upon physical examination both before and after the fall, Plaintiff exhibited a nontender neck with full ranges of motion. (TR. 350, 352, 354, 356, 359, 361, 364, 387-388, 390, 392). Treatment for the cervicalgia was limited to Tylenol with codeine for pain and Skelaxin to relax the muscles. (TR. 388).

And even though the ALJ found Plaintiff's cervicalgia to be nonsevere, he specifically stated he had considered this non-severe condition in combination with Plaintiff's impairments that were severe. (TR. 19). Thus, the ALJ fulfilled his duty with regard to Plaintiff's neck pain.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties.

Based on the forgoing analysis, the Court **REVERSES** the Commissioner's decision and **REMANDS** this case to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED on September 16, 2020.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE